FILED
2020 Feb-20 PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SCOTT ALBURL, et al., )<br>)<br>Defendant. ) | Case No.: 5:18-cv-1935-LCB |

## MEMORANDUM OPINION

The Plaintiff, Joe Hand Promotions, Inc. ("JHP"), asserts one count of satellite and cable piracy, and one count of copyright infringement against the Defendants, Scott Alburl, Angie Alburl n/k/a Angie Barraza, and Sidelines33, LLC, d/b/a Sidelines Pub & Grub[1] ("Sidelines"). Alburl and Barraza are sued in their individual capacities as well as in their capacities as "officers, directors, shareholder, members and/or principals of Sidelines33, LLC." The Clerk entered default as to Scott Alburl and Sidelines on March 19, 2019, when they failed to respond to the complaint. (Docs. 15 and 16). The case is now before the Court on the Plaintiff's motion for summary judgment as to Angie Barraza. In its motion, JHP states that it "now solely moves for summary judgment and an award of damages under the Copyright Act." (Doc. 23, p. 1).

---

[1] The complaint also named Christopher Anderson as a defendant. However, Anderson was dismissed on April 15, 2019. (Doc. 21).

Jurisdiction is proper in this Court as this action arises under federal law. *See*, 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this District pursuant to 28 U.S.C. 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in the District. Additionally, all of the Defendants are alleged to reside in this District.

**I.     Background**

JHP asserts that it is a corporation that "specializes in distributing and licensing premier sporting events to commercial/non-commercial establishments including bars, restaurants, clubhouses, shops, and similar locations." (Doc. 1, p. 2). According to JHP, it was granted the exclusive right by the copyright holder to commercially distribute the presentation of the *Floyd Mayweather, Jr. vs. Conor McGregor* boxing match ("the Program"), including all undercard bouts and commentary on August 26, 2017.

JHP alleges that the Defendants exhibited the Program at their establishment, Sidelines Pub & Grub, without paying the proper licensing fee. According to JHP, the Defendants circumvented the licensing requirement and "unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream." (Doc. 1, p. 3). JHP alleged that the Program would have been legally available to the Defendants had they paid the proper licensing fee. JHP contends that the Defendants advertised the Program on Sidelines's official Facebook page

and intentionally pirated the Program for the purpose of attracting paying customers. In its count for copyright infringement, JHP seeks statutory damages, attorney's fees, costs, and interest pursuant to 17 U.S.C. § 505.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Anderson"). All reasonable doubts about the facts and all

justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249, 106 S.Ct. 2505.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997). "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 248, 106 S.Ct. 2505 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*., 477 U.S. at 322, 106 S.Ct. 2548. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw.*

*Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (*citing Anderson*, 477 U.S. at 250-51, 106 S.Ct. 2505).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (*quoting Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Undisputed Facts

In her response to JHP's motion for summary judgment, Barraza does not dispute that the Program was broadcast at Sidelines. *See* (Doc. 33, p. 2). However, Barraza denies that she assisted in any way with the unlawful interception of the Program, and maintains that she knew nothing about the alleged infringement including whether a licensing fee was paid to JHP. Barraza also concedes that she owns ten percent of Sidelines33, LLC, that she was a principal of the company, and that she served as a manager of the establishment on the date the Program was

exhibited. (Doc. 33, p. 2-3). Alburl and Barraza were married at the time the Program was broadcast but have since divorced.

## IV. Discussion

"'To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work].'" *Saregama India, Ltd. V. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011), *quoting Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1300 (11th Cir. 2008). JHP alleged in its complaint that it had the sole exclusive right to license the Program and that Sidelines33, LLC, broadcast the program without paying the required licensing fee.

Barraza does not dispute that the copyright for the Program was assigned to JHP nor does she dispute that the Program was broadcast at Sidelines Pub & Grub. *See* (Doc. 33, p. 2). However, in her affidavit that she attached to her response, she stated that she was unaware that Alburl failed to obtain proper licensing for the Program and that she was not involved with intercepting or receiving the transmission. (Doc. 33-1, p. 4). Nevertheless, JHP attached documents to its motion for summary judgment showing that it contracted with the owners of the copyright to the Program for the exclusive commercial rights to distribute the Program under the copyright laws of the United States. (Docs. 23-3, 23-2, and 23-4). Further, JHP asserted that Sidelines did not pay a licensing fee.

JHP also attached the affidavit of Douglas E. Sharp, a private investigator who stated that, on the night of the event, he went to Sidelines Pub & Grub and witnessed the Program being displayed on 19 television screens to approximately 145 patrons. (Doc. 23-6). Sharp took photographs of the television screens showing the Program and attached those to his affidavit. Thus, JHP has presented evidence that it owned the rights to license the Program under the relevant copyright laws and that those rights were infringed when the Program was unlawfully broadcast at Sidelines.

Further, JHP's evidence demonstrates that the conduct in question was "willful" under the Copyright Act. The Eleventh Circuit "has stated that willfulness under the Copyright Act 'means that the defendant "knows his actions constitute an infringement; the actions need not have been malicious."'" *Yellow Pages Photos, Inc. v. Ziplocal*, LP, 795 F.3d 1255, 1271 (11th Cir. 2015), *quoting Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir.1990), *quoting in turn Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir.1988)). JHP attached to its motion screenshots of a Facebook page the was apparently maintained by Sidelines. (Doc. 23-8). The pages contain the following statement: "Attention everyone! Sidelines Pub & Grub will be showing the Mayweather vs. McGregor fight! No cover and we will have it in the bar only! See all of you Saturday, August 26!" *Id*. Underneath that language is the address of the establishment and its hours of operation.

7

Sharp's affidavit also includes a photograph showing the copyright warning that appeared on the television screens before the Program began. That warning stated:

> Federal law effectively prohibits any person from receiving the live telecast of this event other than authorized pay per view subscribers and licensed closed circuit locations. Violators will be subject to prosecution to the full extent of the law. Showtime Networks, Inc. and its licensees are the exclusive owners of all worldwide rights to this telecast, including those rights under the federal copyright law and cable communications act. Any person or entity receiving, recording, exhibiting or transmitting this telecast without proper license or other authority shall be exposed to risk of liability for substantial damages, including statutory damages, injunctive relief, costs and attorney fees, and other severe penalties. Please also be advised that this pay per view event is subject to different licensing rates for commercial and residential customers. If you are a commercial establishment, it is unlawful to you to attempt to license this program for residential subscription and instead exhibit it at a commercial establishment.

(Doc. 23-6, p. 5).[2] Despite that conspicuous warning, Sidelines exhibited the Program to its patrons. Accordingly, JHP has offered evidence that would support a prima facie case of willful copyright infringement by Sidelines. The only question the Court must answer in this case is whether Barraza can be held jointly liable with Sidelines.

---

[2] The text of this piracy/copyright warning also appears in an affidavit that was attached to the Plaintiff's reply in support of its motion to dismiss. (Doc. 34-1, p.1-2). That affidavit is the subject of the Defendant's motion to strike. (Doc. 35). However, because that text, as well as the other pertinent information appears in another part of the record that has not been objected to, the motion to strike is denied as moot.

In her response to JHP's motion, Barraza asserts that she was a "minor owner" of Sidelines33, LLC, and that the business was "completely under the control and direction of [her] former husband, Scott Alburl." (Doc. 33, p. 1). In her attached affidavit, Barraza stated that she owned ten percent of Sidelines33, LLC. (Doc. 33-1, p. 2). Barraza asserts that she "worked as a daytime manager and bar tender for Sidelines33 during 2014 until [her] departure in 2017. [Her] responsibilities were limited to include scheduling servers and bar tenders, daytime bartending, opening the store on occasions, counting the drawer and ensuring the restaurant and bar was stocked." (Doc. 33-1, p. 2). However, Barraza claims that all of the unlawful activity alleged in the complaint fell under the purview of Scott Alburl and was orchestrated and carried out by him without her knowledge or assent. Barraza also stated that, even if she had known about her former husband's activities with regard to the Program, she would not have been able to stop him because, she says, Alburl was abusive and deceitful towards her in their marriage. Assuming that Barraza's allegations are true, the Court must determine whether, despite her alleged limited ownership and control of Sidelines33, LLC, she can still be held vicariously liable for the infringing conduct of Alburl and Sidelines33, LLC.

In her response to JHP's motion for summary judgment, Barraza cites *Simpleville Music v. Mizell*, 451 F. Supp. 2d 1293 (M.D. Ala., September 14, 2006), for the standard of vicarious liability in the copyright context:

9

A person, "including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Southern Bell. Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985)(citation omitted); *see also Chi–Boy Music v. Towne Tavern, Inc.*, 779 F.Supp. 527, 530 (N.D.Ala.1991) (Hancock, J.). Similarly, "under the Copyright Act, an individual who is the dominant influence in a corporation, and through his position can control the acts of that corporation, may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements." *Quartet Music v. Kissimmee Broadcasting, Inc.*, 795 F. Supp. 1100, 1103 (M.D. Fla. 1992))(Kellam, J.).

Barraza contends that she had no ability to supervise the infringing activity and that she was not a "dominant influence" in Sidelines33, LLC. Thus, Barraza reads *Simpleville* to say that only a person with the ability to supervise the infringing activity or that is a dominant influence in a business can be held vicariously liable with the business. Were that the case, then Barraza's level of control and influence in the business would be material, and there would clearly be disputed facts that would allow this case to survive summary judgment. However, the Court does not read *Simpleville* with such narrow applicability.

In *Simpleville*, the plaintiffs, who were members of the American Society of Composer, Authors and Publishers, asserted that the defendant violated the Copyright Act when he played their copyrighted music on the radio without authorization. The defendant put forth several defenses including the contention that "he did not personally control the content of the broadcasts." 451 F. Supp. 2d, at

1296. In rejecting that argument, the district court cited the above-quoted language and found that the defendant, as the president, owner, and sole stockholder of the company, "fit the bill of being the supervising, dominant figure" at the radio stations. *Id*.

In *Simpleville* there was a single defendant who argued that he could not be held jointly liable with his company because, he said, he had no knowledge of the infringement. The holding in *Simpleville* addressed that argument, i.e., whether an owner of a company could be held jointly liable for the company's infringing activity even if the owner had no knowledge of the infringement. The court in *Simpleville* did not hold that <u>only</u> individuals with a high level of influence could be jointly liable for the infringing activity of the business, because there were no defendants in that case claiming they were not liable because of their lack of control and influence in the company. Thus, Barraza's argument is distinguishable from the argument raised and addressed in *Simpleville*.

Similarly, *Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir.1985), the Eleventh Circuit case cited by the court in *Simpleville*, did not specifically hold that minor owners cannot be held jointly liable with the company. In *Southern Bell*, the defendants claimed that they should not be held liable because the infringement was actually committed by a third-party contractor. In rejecting that defense, the Eleventh Circuit found that the

11

defendants "all had a financial interest in the infringing activity and the right to supervise [the alleged infringer's] activities." The court held that "liability falls on all of them even if they were ignorant of the infringement." 756 F.2d 801, 811. Thus, the thrust of the holding in both *Simpleville* and *Southern Bell* was that actual knowledge of the infringing conduct is not a necessary element of copyright infringement.

That last point is also relevant in the present case. The Eleventh Circuit has held that ignorance of the infringing activity is not a defense. Said another way, plaintiffs are not required to prove that a defendant intentionally infringed on the copyright. *See also Joelsongs v. Shelley Broad. Co.*, 491 F. Supp. 2d 1080, 1084 (M.D. Ala. 2007), *quoting Buck v. Jewell–LaSalle Realty Co.*, 283 U.S. 191, 198, 51 S.Ct. 410, 75 L.Ed. 971 (1931)("'[I]ntention to infringe is not essential under the [Copyright] Act.'"). Barraza's argument does not take that principle into consideration.

The holdings in *Simpleville* and *Southern Bell*, when read together with the fact that intent to infringe is not a requirement for liability, suggests that an owner of a company, even a minor owner, can be held jointly liable for the infringing activity of the business. To hold otherwise would require courts in similar situations to determine the exact responsibilities of each owner or officer of a company in order to determine which ones could be held liable for copyright infringement. Given the

fact that the roles of business owners are not always clearly defined, such a holding would allow business owners to escape liability by simply stating that they were not responsible for the part of the business that led to the infringing activity. The Court is of the opinion that such a result would violate the Supreme Court precedent that "[i]ntention to infringe is not essential under the [Copyright] act." *Buck*, 283 U.S, at 198.

In her affidavit, Barraza claimed that Alburl lied to her about certain aspects of the business, that he was not consistent in paying taxes[3], and that he refused to close Sidelines33, LLC, despite her advice and the advice of former owner Chris Anderson that he do so. JHP originally named Christopher Anderson as a defendant based on the belief that he was also a joint owner of Sidelines33. In Anderson's answer, he stated that he sold his "45% ownership investment in Sidelines33 to K. Scott Alburl and Angie M. Alburl in the amount of $0.00" prior to the date of the alleged infringement. (Doc. 9, p. 2). The Plaintiff voluntarily dismissed Anderson after his answer was filed. (Doc. 21). Barraza has not alleged that Alburl forced her to own ten percent of the business or that he prevented her from selling or transferring her interest in it as Anderson did. All business owners share in both the gains and losses of their businesses. Had the business been profitable, Barraza

---

[3] Barraza states that she is currently paying $300 per month on a tax lien for Alburl's failure to pay certain taxes. (Doc. 33-1, p. 3).

13

would have been entitled to a share of those returns. However, she can not now disclaim her interest in the business to avoid its liabilities.

Finally, the Court finds no dispute as to whether Barraza had a financial interest in Sidelines33, LLC. Although she states in her affidavit that the establishment never made a profit, she stated that "[f]rom time to time [she] was paid a small wage, but often was only paid by the tips [she] received by tending the bar." (Doc. 33-1, p. 2). Additionally, as noted above, Barraza put forth no evidence demonstrating that she would not have been entitled to a share of the business's profits had it been successful.

The Court therefore holds that Barraza's level of influence in Sidelines33, LLC, is not a material fact for the purpose of determining whether she is jointly liable for the business's copyright infringement. As such, there are no remaining factual disputes regarding the infringement of the copyright in question. Accordingly, summary judgment is due to be granted in favor of the Plaintiff as to liability.

### V. Damages

In its motion for summary judgment, JHP asks for statutory damages in the amount of $24,600. That amount, JHP says, represents three times the amount of

the licensing fee that Sidelines should have paid.[4]  This amount is well under the statutory maximum for damages in cases of willful copyright infringement. *See* 17 U.S.C. § 504(c)(2) (In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.)  Courts have generally upheld awards of three times the amount of the proper licensing fee as an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them.  *See Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229–30 (7th Cir.1991); *Dream Dealers Music v. Parker*, 924 F.Supp. 1146, 1153 (S.D. Ala.1996); *Sailor Music v. IML Corp.*, 867 F.Supp. 565, 570 (E.D. Mich.1994); *Major Bob Music v. Stubbs*, 851 F.Supp. 475, 481 (S.D.Ga.1994).

In her response, Barraza re-asserts her contentions that she was unaware of Alburl's activities.  Therefore, Barraza says, she is an innocent infringer and, consequently, the Plaintiff would "only be entitled to a de minimis damage award." (Doc. 33, p. 11).  This is incorrect.  The Copyright Act provides: "In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an

---

[4] Barraza does not dispute JHP's assertion that the licensing fee for Sidelines would have been $8,200.  (Doc. 33, p. 2).

infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2). Thus, if Barraza were an innocent infringer, the Court, *in its discretion*, could lower the award of statutory damages to $200. The Court would still have the discretion to award more than $200.

However, as described in the previous section, the infringement at issue in this case was willful. Sidelines advertised the Program on its Facebook page, and Barraza admits that the Program was shown at Sidelines on the night in question. Additionally, there was a copyright warning conspicuously displayed on the television screen immediately before the Program began. (Doc. 23-6, p. 5). Barraza appears to misunderstand the concept of vicarious joint and several liability. As noted above, the Plaintiff is not required to even prove that she had knowledge of or participated in the infringement. Rather, as an owner, the infringing actions of Sidelines are imputed to her.[5] As discussed above, those actions were willful in nature. Accordingly, the amount of statutory damages is between $750 and $150,000. *See* 17 U.S.C. § 504(c)(1) and (2).

---

[5] Based on Barraza's responses, it appears that her ex-husband, Scott Alburl, was also an owner of Sidelines. As noted, Alburl has failed to respond to this lawsuit and is currently in default. The Plaintiff has stated that it fully intends to pursue a default judgment against Alburl once the claims against Barraza are resolved.

Barraza has requested, and is entitled to, a jury trial as to the amount of damages. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355, 118 S. Ct. 1279, 1288, 140 L. Ed. 2d 438 (1998), q*uoting Tull v. U.S.*, 481 U.S. 412, 426, *quoting in turn Colgrove v. Battin*, 413 U.S. 149, 157 (1973)("As a result, if a party so demands, a jury must determine the actual amount of statutory damages under[17 U.S.C.] § 504(c) in order 'to preserve "the substance of the common-law right of trial by jury."'"). In its reply, JHP cites cases in support of its position that damages may be awarded at the summary judgment stage. However, in the cited cases, the defendants either failed to request a jury trial, or the plaintiffs were asking only for the minimum amount of statutory damages in which case there was nothing for a jury to decide. That is not the case here as Barraza requested a trial by jury in her answer to JHP's complaint and JHP is asking for more than the statutory minimum. (Doc. 10, p. 4). Accordingly, summary judgment is due to be denied as to the amount of damages. The Court will defer its judgment on whether to award attorney's fees and costs to after trial.

## VI. Conclusion

For the foregoing reasons, summary judgment is due to be **GRANTED IN PART** in favor of the Plaintiff as to the issue of liability. However, summary judgment is due to be **DENIED IN PART** as to the amount of damages. Barraza's motion to strike (Doc. 35) is **MOOT**. A separate order will be entered.

**DONE** and **ORDERED** this February 20, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE